IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KALI MCQUILLEN,

    **Plaintiff,**

    v.

COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

Civil Action 2:20-cv-6006
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge King

### REPORT AND RECOMMENDATION

Plaintiff Kali McQuillen ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). This matter is before the undersigned for report and recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 17), and the Administrative Record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

    **I.**    **BACKGROUND**

Plaintiff protectively filed her application for DIB on August 18, 2017, alleging that she became disabled on August 21, 2013. (R. at 221-27.) On December 12, 2019, following administrative denials of Plaintiff's application initially and on reconsideration, a hearing was

held by Administrative Law Judge Kathleen Kadlec (the "ALJ").[1]  (R. at 34-72.)  Plaintiff, who was represented by counsel, testified, as did a vocational expert.  On February 5, 2020, the ALJ issued a decision denying benefits.  (R. at 12–28.)  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review of the ALJ's decision.  (R. at 1–6.)

## II. THE ALJ's DECISION AND ISSUES ON APPEAL

In her decision, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019.  (R. at 17.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date of August 25, 2013, through the date on which she was last

---

[1] An administrative hearing was originally scheduled for August 1, 2019, but Plaintiff requested a continuance in order to obtain counsel.  (*See* R. at 73-81).

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

insured. (*Id.*) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine and occipital neuralgia were severe impairments. (*Id.*) The ALJ also found that Plaintiff's depression and posttraumatic stress disorder ("PTSD") were not severe. (*Id.*)

At step three, the ALJ found that, through the date on which she was last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.)

The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: She can occasionally use foot controls. She can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, and crawl. She cannot tolerate exposure to unprotected heights and can only have frequent exposure to moving mechanical parts and motor vehicle operation. She can have no more than occasional exposure to vibration. The claimant is limited to semi-skilled work. She can have no more than frequent contact with coworkers, supervisors, and the public.

(R. at 21.) In assessing Plaintiff's subjective complaints, the ALJ found that, although Plaintiff's medically determinable impairments could be expected to cause at least some of her alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence. (R. at 22.)

At step four, the ALJ found that, through the date on which she was last insured, Plaintiff was unable to perform her past relevant work as a management trainee, real estate clerk, department manager, and cashier checker. (R. at 26.)

At step five, the ALJ relied on the testimony of the vocational expert ("VE") to find that, through the date on which she was last insured for DIB, Plaintiff's vocational profile and RFC would permit the performance of jobs that existed in significant numbers in the national

3

economy, including such jobs as merchandise marker, delivery marker, and mail clerk. (R. at 27.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act at any time from August 25, 2013, her alleged disability onset date, through December 31, 2019, the date on which she was last insured. (R. at 29.)

Plaintiff argues that the ALJ erred in concluding that Plaintiff's depression and PTSD were not severe impairments and that the ALJ failed to properly determine the impact of Plaintiff's migraine headaches on her ability to perform in the workplace. (ECF No. 13 at PageID # 1239-47.) Plaintiff also disagrees with the ALJ's RFC determination as it relates to Plaintiff's headaches and migraines. (*Id*. at PageID# 1241n.1, 1248-49.)

### III. RELEVANT RECORD EVIDENCE

**A. Mental Impairments**

1. Primary Care Physician Jean McKee, M.D.

In her office notes, Plaintiff's primary care physician, Jean McKee, M.D., observed no complaints of a mental impairment, including depression or anxiety. (*See, e.g*., R. at 811, 814.) Similarly, Dr. McKee's office notes reflect normal psychiatric findings, including normal recent and remote memory. (R. at 811, 815, 821.)

2. Consultative examiner John Paulus, Ph.D.

John Paulus, Ph.D., examined Plaintiff at the request of the state agency on February 20, 2018. (R. at 977-85.) Plaintiff reported that she could no longer work because of lower back pain and migraine headaches. (R. at 978.) She denied any treatment for a mental impairment. (R. at 979.) She had gotten along well and in fact socialized with her coworkers and supervisors. (*Id*.) Although her reading and arithmetic skills were good and her writing and spelling abilities were excellent, she had trouble following oral instructions at work because she struggled to

remember them. She had no trouble following written instructions in the workplace, but did struggle to concentrate at work. (*Id.*) In describing her activities of daily living, Plaintiff reported that she was responsible for the household cleaning and cooking, and occasionally went shopping with her husband. (R. at 980.) She uses social media and watches television during the day. (*Id.*) On mental status examination, Plaintiff was found to be alert and oriented to person, place, time and situation and was able to immediately recall seven digits forward and four backward. Word association skills were fair, and abstract reasoning was excellent. Her concentration and persistence on task were good, and her pace was average. She was able to follow directions. (R. at 981-82.) Plaintiff's remote memory was characterized as "poor." (R. at 982.) According to Dr. Paulus, Plaintiff would not be able to understand, remember, or carry out complex instructions at work, nor could she concentrate or persist in work-related activity, respond appropriately to supervisors, coworkers, or the public, and respond appropriately to normal pressures in public or in a work setting. (R. at 982-84.)

    3. <u>State Agency reviewing psychologist Courtney Zeune, Psy.D.</u>

  Plaintiff's file was reviewed by state agency psychologist Courtney Zeune, Psy.D., in March 2018. (R. at 96-109.) According to Dr. Zeune, Plaintiff would be moderately limited in understanding, remembering, or applying information; in interacting with others; in maintaining concentration, persistence, or pace; and in adapting or managing herself. (R. at 103.) Plaintiff could understand and remember simple one- to three-step directions that did not require a fast pace or high production quota. She would be limited to superficial contact with the general public, coworkers, and supervisors. She could work in a static/routine environment. (R. at 108-09.) Dr. Zeune found Plaintiff credible, noting her "reported social limitations which is fully consistent with what she told [Dr. Paulus]. She said that she is perfectly happy sitting at home

5

and not doing anything or going anywhere. She says she has frequent crying spells and started crying on the phone while speaking to the AOR." (R. at 105.)

4. Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she does not like to be around people and that she is emotional. (R. at 44.) She does not go out by herself because of her anxiety. (R. at 48, 56.) She cannot concentrate and her memory is "terrible." (R. at 47.) However, she does not receive mental health treatment. (R. 45, 47.)

**B. Migraine Headaches**

1. Treatment

On March 3, 2016, Plaintiff saw Dr. McKee for complaints of intermittent migraine headaches that occurred with her menstrual cycle. (R. at 818.) Dr. McKee prescribed medication, (R. at 819), but Plaintiff quit taking that medication after one dose because, she reported to Dr. McKee, the medication caused a headache and vice-like occipital pain. (R. at 814.) Plaintiff again reported migraines to Dr. McKee in May 2016, (R. at 811), for which Dr. McKee prescribed a different medication. (R. at 812.)

Plaintiff did not complain again of headaches for the next year and a half. In November 2017, she reported that the new medication had helped, although she still experienced intermittent headaches two to four times per month. (R. at 1006.) In December 2017, Plaintiff reported that she had stopped the prescribed medication and now experienced two to four migraines per week. (R. at 1003.) Dr. McKee referred Plaintiff to a neurologist for evaluation of her headaches. (R. at 1004.)

Plaintiff first saw neurologist DeRen Huang, M.D., Ph.D., on January 4, 2018. She reported daily headaches for a "few years." (R. at 969.) On examination, Dr. Huang noted

6

tenderness in the bilateral occipital areas. (R. at 970.) There was no evidence of a cognitive impairment. (*Id.*) Dr. Huang diagnosed cervico-occipital neuralgia, prescribed Depakote, and ordered an MRI of the brain. (R. at 971.) The MRI of the brain was normal. (R. at 972.) When seen for follow-up on January 24, 2018, Plaintiff reported improvement of her headaches with Depakote, and recalled only three headaches during the prior week. (R. at 965.) Dr. Huang diagnosed daily headaches and cervico-occipital neuralgia. (R. at 966-67.) Plaintiff underwent nerve block injections for her neuralgia in February and April 2018. (R. at 1156-60.) In May 2018, Plaintiff reported that she had not had a good response to occipital nerve injection therapy. (R. at 1152.)

When seen in April 2019, Plaintiff reported that her migraines were "not as harsh" as before. (R. at 1143.) The intensity of the headaches had also improved, and Plaintiff did not need to be in a dark room to cope. (R. at 1142.) Dr. Huang continued Plaintiff's injections. (R. at 1144.)

    2. <u>Consultative examiner Mae Gallagher, M.D.</u>

Mae Gallagher, M.D., consultatively examined Plaintiff upon referral from the state agency in October 2017. (R. at 952-61.) Plaintiff complained of low back pain and migraines. (R. at 952-953.) On examination, Plaintiff was in no acute distress, and her memory and concentration were normal. (R. at 954.) Dr. Gallagher opined that Plaintiff could walk for more than one hour, sit for more than one hour at a time, stand for more than one hour, and lift fifteen pounds; she had no substantial physical limitations. (R. at 956.)

    3. <u>State agency reviewing physician Anton Freihofner, M.D.</u>

Anton Freihofner, M.D., reviewed Plaintiff's file upon reconsideration in March 2018. He specifically noted the January 2018 MRI of the brain, which showed no significant

7

abnormalities, and the fact that Plaintiff's headaches had improved after she started Depakote, which had caused no side effects. (R. at 102.) Dr. Freihofner opined that Plaintiff's back impairment and migraines would limit her to light work, further limited to only frequent climbing of ramps and stairs and stooping, and no climbing of ladders, ropes, or scaffolds. (R. at 105-06.)

    4. Plaintiff's Testimony

Plaintiff testified that her headaches are "terrible." (R. at 50.) She experiences headaches on a daily basis and migraine headaches "15 times a month." (R. at 51.) The headaches sometimes last more than a day, (*id*.), cause nausea, and require her to lie down in a darkened room. (R. at 50-52.) Injection treatments do not alleviate these symptoms. (R. at 53.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, a court must affirm the Commissioner's decision if the ALJ applied the proper legal standards and if the administrative decision is supported by substantial evidence. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224-25 (6th Cir. 2019); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means- and means only-such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted.) Although the substantial evidence standard is deferential, it is not trivial. A court "'must take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

### A. Mental Impairments

Plaintiff contends, first, that the ALJ erred in finding that Plaintiff's determinable mental impairments of depression and PTSD did not cause more than mild limitations in her ability to perform basic mental work activities and were therefore non-severe. (R. at 18-20.) A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of

9

symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908).

In support of this argument, Plaintiff points to the report and opinion of consultative psychological examiner Dr. Paulus, and to the opinion of reviewing psychologist Dr. Zeune, who both opined that Plaintiff's mental impairments posed serious limitations in her ability to engage in work-related activities. The ALJ found both opinions "not persuasive," however, (R. at 19, 20), because they were not consistent with some of the medical evidence and were based significantly on Plaintiff's own subjective reports: "There was no evidence of specialized mental health treatment, and examinations by claimant's primary care provider and neurologist were generally normal as to mental functioning." (*Id.*) As the summary of the relevant evidence provided above indicates, the ALJ's findings in this regard enjoy substantial support in the record.

In any event, where an ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same). In the case presently before the Court, the ALJ satisfied this standard by finding that the "mental limitations noted in

10

the residual functional capacity that are due to the claimant's headaches would sufficiently cover any effects of a mental impairment." (R. at 20.)

### B. Migraine Headaches

Plaintiff also contends that the ALJ failed to properly determine the impact that Plaintiff's migraine headaches have on her ability to perform in the workplace. The record contains no medical opinion indicating that Plaintiff's headaches result in work-related limitations, but Plaintiff argues that Plaintiff's "testimony, if credited, would have led to a favorable conclusion in her case…." (ECF No. 13, at PageID# 1244.)

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's

decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

In the case presently before the Court, the ALJ considered Plaintiff's testimony and subjective complaints in exhaustive fashion, (R. at 22-25), but concluded that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms, … are inconsistent with the objective medical evidence." (R. at 22.) In considering Plaintiff's subjective allegations regarding her headaches, the ALJ noted, first, the gap in treatment from May 2016 until late 2017: "Such a gap is not consistent with the alleged frequency or severity of the headaches." (R. at 23.) The ALJ also noted the normal MRI of the brain and Dr. Huang's comment that the condition had improved with treatment:

> By April 2019, the claimant reported improvement, with days she did not have any headaches. The intensity had also improved, without a need to be in a dark room. An examination was unremarkable. During this time, the claimant still did not present in any acute distress and is not noted to appear with any protective eyewear.

> There was no further evidence concerning her headaches, and the improvement is not consistent with the alleged severity and frequency of headaches.[3]

(R. at 24-25)(citations to record omitted). The ALJ's credibility determination conformed to applicable standards and finds substantial support in the record. This Court is therefore without authority to disturb that determination.[4]

### C. RFC

The ALJ crafted an RFC that included a "limitation to semi-skilled work, contact limitations, and some limitations as to hazards, heights and driving … to address the claimant's headaches." (R. at 26.) The ALJ explained that these limitations were added "so that it is easier for the claimant to focus." (R. at 24.) Plaintiff insists that this RFC is not supported by substantial evidence. (ECF No. 13, at PageID# 1248.) According to Plaintiff, "[t]here is no evidence whatsoever, much less substantial evidence, to suggest that these would provide a benefit to someone who suffered from migraine headaches." (*Id.*)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The RFC determination is an issue

---

[3] Because Plaintiff stated at the administrative hearing that she received medical treatment after April 2019, the ALJ left the record open for the submission of additional evidence. (R. at 70.) However, no evidence of such treatment was submitted to the ALJ. (R. at 25.)

[4] It is true that, in evaluating Plaintiff's subjective complaints relating to her headaches, the ALJ also referred to Dr. Gallagher's consultative examination, and noted that "there was no mention of headaches." (R. at 24.) To the contrary, Plaintiff did apparently mention her headaches to that examiner, although Dr. Gallagher did not ascribe any work-related limitations to Plaintiff's headaches. (R. at 953.) This minor mis-statement on the part of the ALJ does not, in the view of this Court, warrant reversal and remand. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it.") *See also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

An ALJ is required to explain how the evidence supports the limitations that she sets forth in a claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96–8p, 1996 WL 374184, at *7.

In the case presently before the Court, none of Plaintiff's treating physicians offered an opinion that Plaintiff's headaches or migraines impose any work-related limitations. Dr. Gallagher, the consultative examiner, found a need for only exertional limitations. Dr. Freihofner, a reviewing state agency physician, opined that Plaintiff's back impairment and migraines would limit her to light work, further limited to only frequent climbing of ramps and stairs and stooping, and no climbing of ladders, ropes, or scaffolds. Thus, the limitations found by the ALJ in her RFC determination were more restrictive than those proposed by these medical experts. If the ALJ committed any error in her RFC determination, then, the error was surely harmless. It is true, of course, that Drs. Paulus and Zeune proposed greater restrictions and Plaintiff testified to significant limitations caused by her migraines and headaches. However, the ALJ found that those opinions were not persuasive and that Plaintiff's subjective complaints

14

were not fully credible and this Court has determined that those findings enjoy substantial support in the record.

## VI. RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision and enter **FINAL JUDGMENT** in favor of the Commissioner pursuant to Sentence 4 of 42 U.S.C. § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                  /s/*Norah McCann King*
                                                  Norah McCann King
                                                  United States Magistrate Judge

December 29, 2021